## WEBSTER v. STEARNS.

## GRIFFIN v. STEARNS.

In general, the acts and declarations of one partner, while acting within the scope of the partnership business, are binding on the firm, whether honestly or dishonestly intended.

The question whether money has been borrowed by one partner, on his own credit, and for his private use, or on the credit and for the use of the firm, is for the jury to determine; and in finding their verdict the admissions of the partner borrowing the money may be weighed by the jury.

THIS action of John P. Webster against James A. Stearns and Horatio Fradd, was assumpsit, for money had and received, and for money paid.

The existence of the partnership between the defendants was admitted.

The plaintiff introduced his own deposition. The interrogatories and answers numbers 3, 4, 13, 14, 15 and 16 were read, subject to the objection of the defendants that the admissions and declarations of Stearns were inadmissible to show a contract made by the firm.

The plaintiff introduced in evidence a note for $500, dated December 15, 1859, payable to the Amoskeag bank, and signed by Stearns, the defendant, the plaintiff and Silas Griffin; and another note for $500, dated November 24, 1860, payable to the Derry bank, and signed by the same persons. It was admitted that the plaintiff had paid one half of these notes before the commencement of this action, and that Griffin had paid the other half. The plaintiff claimed that he paid for the use and benefit of James A. Stearns & Co.; the defendants claimed that the payments were solely for the use of James A. Stearns. The plaintiff's witnesses testified as follows, the parts of testimony in brackets being subject to the exceptions of the defendants that the admissions and declarations of Stearns, made when Fradd was not present, were not binding upon the firm:

*Silas Griffin.* April 4, 1859, the plaintiff and I, as sureties, signed a note for $500 with Stearns, to the Derry bank. Stearns took all the money. [Stearns said he wanted the money to go into trade with the plaintiff, and I signed the Amoskeag bank note and the Derry bank note of November 24, 1860, as sureties.] The plaintiff and I paid the two last notes, each paying one half. We got no money on either of the notes. Stearns took the money for which all the notes were given. [When we signed the last Derry bank note Stearns induced us to sign it by saying that the Amoskeag note came due the next day, and he must raise the money, if possible, and pay it. He said he should send to the Derry bank the next day, get the money, pay it to the Amoskeag bank, and take up the note to the Amoskeag bank. The next day or next but one after I was sued on the Amoskeag note, I came up to Manchester to see about it; went to the defendant's store, and asked Stearns why he did not pay the money from the Derry bank to the Amoskeag bank, as he had agreed to. He said they had a bill come up from Boston,

and he paid $300 of it on that and $200 to a man on the street; that that bill was just the same as if it was in the bank; that they could not let other debts lay any more than they could the bank debt; that he got the bank to let the note lay.]

*Cross Ex.*  The first note to the Derry bank, dated April 4, 1859, was finally paid by Stearns with the money obtained upon our note to the Amoskeag bank, and the Amoskeag bank note was to have been paid by him with the money obtained upon our last note to the Derry bank, but it was not.  I understand that the defendant's partnership commenced in June, 1859.  When Stearns got the money on our note in April, he said he was going into business on the other side of the river, at Amoskeag village.  He did not then say any thing about having a partner.

*Daniel N. Hoit.*  I came up with Griffin to Webster's, January 1, 1861, I think.  Griffin, Webster and I, on our way up, stopped at Stearns' house.  [Afterward, on the same day, up here, on the steps of the defendant's store, I asked Stearns, What is the reason he did not pay the Derry money to the Amoskeag bank?  He said: "The next day we were looking over our cash book, and found some bills coming due, and I paid the money on them."  Then I asked him what he did with the first $500 from the Derry bank?  He said, "Part of it we put into the store, and part of it to other uses.  We had no horse."  Said I, "You ought to have paid that money into the Amoskeag bank."  He said: "There was not a man of our standing but what would have done the same as we have done."  This was the day the plaintiff and Stearns paid the Amoskeag bank.  The defendants were in trade on Elm street in Manchester.]

*Amos C. Webster*, a brother of the plaintiff.  [Soon after the commencement of this suit I was passing down street.  Stearns came out, hailed me, and asked me why my brother should sue an individual to collect of a firm?  I said if the money went into the firm I suppose it could be collected of the firm.  He said it did not go into the firm.  I asked him if he did not tell Hoit so.  He said no; that he recollected well what he told Hoit; that he told Hoit that when he got home with the money he looked on their book, and found they had debts to pay, and that we must pay the money somewhere else.]

The defendants moved for a nonsuit.  The court overruled the motion, and the defendants excepted.

Both the defendants then testified, and introduced their articles of partnership, books and papers.  They both testified that they did not form their partnership, nor have any arrangement, negotiation, understanding or expectation of forming a partnership with each other before June, 1859; that at that time each put in $750 as capital stock, and neither had ever put in any more; that Stearns kept the books, bought the goods, and signed nearly all the notes given by the firm; that Fradd did little beside selling the goods in the store, and that Stearns was the principal manager of the firm.

Stearns testified, and the cash book showed, that he had loaned small sums of money to the firm at various times, all of which were

repaid from time to time soon after the loans, except $252.75, which he loaned the firm June 22 and 23, 1860, for which he took a note, payable to himself from the firm, which note was written and the firm name signed by himself; which note he had transferred, and it was still unpaid and in suit; that he thought some of the money which he lent the firm, and for which he took said note, was obtained from the Derry bank on the last note signed by the plaintiff Griffin and himself; that he paid $200 of the money obtained upon the last Derry bank note to the City bank, in payment of an individual note which he was owing the City bank. The cash book showed various sums of money borrowed of and repaid to various persons on notes and otherwise, and various sums paid for goods.

The court instructed the jury that the plaintiff could not recover unless he had paid money to the use of the defendant's firm; that if the plaintiff signed any note or notes for Stearns to raise money for him, if the transaction was entirely between the plaintiff and Stearns, the plaintiff could not recover on the ground that the money had subsequently passed from Stearns to the firm, as a loan or as a part of the capital put in by Stearns; that there must be privity of contract between the plaintiff and the firm, but that the law regarded rather the substance and reality than the form of the transaction; that the first question was, Did any of the money obtained upon any of the notes signed by the plaintiff as surety, and which the plaintiff paid, go to the use of the firm; that if any of such money did go to the use of the firm, the second question was, whether any of it so went through Stearns as an independent party, obtaining the money in the first place for his own use, upon his own credit, and then passing it to the firm upon a separate and distinct contract between himself and the firm; or whether the plaintiff and the firm were the only parties, and Stearns only acting as an agent of the firm, obtaining the money not for himself but for the firm; that in the latter case the plaintiff could recover, but in the former he could not; that in accordance with this rule the firm might or might not be liable for money hired and used by them as capital stock — their liability depending upon the question whether it was hired by or for the firm, through Stearns as an agent; in which case they would be liable; or whether it was hired by Stearns on his own account, and then put into the firm as his money; in which case they would not be liable; and that the same rule would apply to loans and all money received by the firm, and that it was for the jury to determine how much money, if any, had been received by the firm for which they would be liable under this rule.

To these instructions the defendants excepted.

The jury returned a verdict for the plaintiff for the whole amount claimed, which was $500 and interest, and the plaintiff took a verdict for that amount, which the defendants moved to set aside. The deposition of the plaintiff was made a part of the case, to be sent to the chief justice, but not to be printed.

THE action of Silas Griffin against the same defendants was assumpsit. This case was the same as the preceding, and the evidence, exceptions and charge in that case were repeated in this.

The plaintiff also introduced the deposition of Sally G. Webster, interrogatories and answers Nos. 1, 5, 6 and 8, being read, subject to the same objection made to the plaintiff's deposition in the former case. David Currier testified, subject to the defendant's exception, that he was cashier of the Derry bank, and just before the last note was discounted at that bank Stearns asked him if he could have another discount at the bank for the same amount, and on the same names as before, and said that he wanted $500 to use in his business. After the charge the defendants requested the court to instruct the jury as follows:

1. That nothing can be recovered for any of the money put into the firm by Stearns as part of his capital.

2. That if they find that any part of the money obtained of the Derry bank on the note of April 4, 1859, went into the firm as a part of Stearns' capital, it can not be recovered in this suit.

3. That if they believe the money obtained of the Derry bank on the note dated April 4, 1859, was paid by Stearns into the partnership as part of his capital, and that the Amoskeag bank note was given to raise money with which to pay this Derry bank debt, then the plaintiff can not recover for any part of the money paid by the plaintiff to the Amoskeag bank.

4. That if the jury find that Stearns paid $200 of the money obtained of the Derry bank on the second Derry bank note, or his individual note to the City bank, nothing can be recovered on that Derry bank note to the extent of said $200.

5. That Stearns had a right to loan to the firm the $252.75, and if he did so loan to the firm that sum in the manner testified to by him, then the plaintiff can not recover any thing on that account.

6. That in regard to the sum of $252.75, the plaintiff can in no event recover only one half of it, with interest on the same.

The court declined to give the instructions requested, and the defendants excepted.

The jury returned a verdict for the plaintiff for $580.74, which the defendants moved to set aside.

The deposition of Sally G. Webster was made a part of the case, to be sent to the chief justice, but not to be printed.

The questions of law arising in both cases were reserved.

*Wm. C. & S. G. Clarke*, for the plaintiffs.

1. The existence of the partnership is admitted. The jury, under the instructions of the court, must have found that the declarations and acts of Stearns were within the scope of the partnership. The acts and sayings of one partner, within the scope of the partnership, bind the firm. Story on Part., sec. 107 ; *Mann* v. *Locke*, 11 N. H. 246; *Odiorne* v. *Maxy*, 15 Mass. 39; *Cady* v. *Shepard*, 11 Pick. 400 ; *Wood* v. *Braddick*, 1 Taunt. 103.

The acts and sayings of one member of a firm, in the general partnership business, done and said within the scope of that business, will govern the firm, whether honestly or dishonestly transacted or said. *Pierce* v. *Wood*, 23 N. H. 519 ; *Locke* v. *Stearns*, 1 Met. 560; Story on Part., sec. 108.

2.  The plaintiffs claim that, though in form it was a transaction between them and Stearns, in substance it was between them and the firm of James A. Stearns & Co. — Stearns in fact acting as agent for the firm; that the money was received by the firm, and was used by them in their business; that the plaintiffs paid the money for the use and benefit of the defendants.  The evidence introduced by the plaintiffs tended to establish this position.

The position is both legal and equitable.  *South-Carolina Bank* v. *Case*, 8 B. & Cr. 427; *Whitaker* v. *Brown*, 16 Wend. 504; *Palmer* v. *Stevens*, 1 Denio 472; Story on Part., sec. 138; Story on Ag., secs. 291, 292.

3.  The instructions of the court cover the whole case, and substantially cover the ground requested by the defendant's counsel. The defendants can not insist upon any particular form of instructions.

*I. A. Eastman*, for the defendants.

1.  The evidence excepted to was not the sayings and doings of a member of the firm, done or said within the scope of the partnership business, but related to his individual and personal matters, and was therefore inadmissible.  *Greeley* v. *Wyeth*, 10 N. H. 15; *Weaver* v. *Rogers*, 44 N. H. 112.

2.  The court should have granted the nonsuit.  There was no competent evidence to charge the firm.

3.  The exceptions to the charge of the court appear in the request for specific instructions.  The defendants were entitled to have these instructions given.

NESMITH, J.  These were several actions of assumpsit, wherein the plaintiffs claimed to recover one half of two promissory notes, which they alleged they had paid for the use and benefit of James A. Stearns & Co., and which originally had been signed as sureties by said plaintiffs, at their request.  The defendants claimed that the original contracts and payments were solely for the benefit and on account of James A. Stearns in his private right.  It was admitted that when the two promissory notes were given — one to the Amoskeag bank, under date of December 15, 1859; the other to the Derry bank, under date of November 24, 1860, each being for the sum of $500 — the defendants were partners in trade in the city of Manchester, and that the said Stearns signed each of said notes as principal, and both of the plaintiffs as sureties.

The plaintiffs offered as testimony the acts and declarations of Stearns, done and made at different times, tending to show that the money procured on the said notes was intended and went for the use of the defendants as a firm.  By the general law of partnership the act of each partner, during the continuance of the partnership, and within the scope of its objects, binds the others.  It is the act of each and of all, resulting from a general and mutual delegation of authority.  By the very act of association, each one is constituted the agent of all; hence the acts and declarations of each member or agent, in furtherance of the common objects of the association

may be shown as the acts and declarations of all; and such admissions are received as original evidence, competent, as constituting part of the *res gestæ,* and binding the firm.    1 Greenl. Ev., sec. 112, and note, and 113; *Mann* v. *Locke,* 11 N. H. 246; Story on Part., sec. 107; *Cady* v. *Shepard,* 11 Pick. 400.

Admissions, whether of law or of fact, which have been received and acted upon by others, are conclusive against the party making them, in all cases between him and the persons whose conduct he has thus influenced.   It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party.   In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations.   1 Greenl. Ev., secs. 27, 207, and authorities in notes.   Hence the acts and sayings of one member of a firm, within the scope of their business, are binding upon the firm, whether honestly or dishonestly done or said.   *Pierce* v. *Wood,* 23 N. H. 519; *Locke* v. *Stearns,* 1 Met. 560.   But whether the sayings and doings of Stearns were within the scope of the partnership business, and the money was in good faith obtained and actually appropriated and used for the firm, or was borrowed on his own credit, or for his own private or personal purposes, was the material question of fact for the jury to settle.   There was evidence introduced by the plaintiffs on these points, competent for them to weigh; therefore the court rightly rejected the motion for a nonsuit.   And the whole evidence, we think, was impartially submitted to the jury under proper instructions and limitations by the court; so that they might apply it fairly to the determination of the main question involved in the case.   We do not perceive why the instructions to the jury were not substantially in accordance with the instructions asked for by the defendant.   They appear to us to have been consistent with the law of the case.   There must, therefore, in each case, be

*Judgment on the verdict.*